UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DIANA DIAZ,
          - Plaintiff


    v.                          CIVIL NO. 3:11CV00317(VLB)(TPS)


MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
          - Defendant


MAGISTRATE JUDGE'S OPINION

        Plaintiff, Diana Diaz, brings this appeal under §§ 205(g)

and 1631(c)(3) of the Social Security Act ("the Act"), as

amended, 42 U.S.C. §§ 405 (g) and 1383(c), seeking review of a

final decision by the Commissioner of the Social Security

Administration ("SSA") denying her applications for Title II

Disability Insurance Benefits ("DIB") and Title XVI Supplemental

Security Income ("SSI").  Plaintiff has moved for an order

reversing the Commissioner's decision or, in the alternative, for

an order remanding her case back to the Commissioner for further

proceedings.  **(Dkt. #18).**  Defendant has moved for an order

affirming the decision.  **(Dkt. #23).**  For the reasons stated

below, Plaintiff's motion should be **GRANTED** in part, and **DENIED**

in part.  It should be **GRANTED** to the extent that it seeks a

remand for further proceedings.  It should be **DENIED** to the

extent it seeks an order reversing the decision of the Commissioner. The defendant's motion to affirm should be **DENIED**. 28 U.S.C. § 636(b)(1)(A).

## I.   STANDARD OF REVIEW

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function. Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977). A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted). "Substantial evidence" is less than a preponderance, but "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing whether the evidence which supports the Commissioner's position, is required to "review the record as a whole")(citations omitted). Still , the ALJ need not "reconcile every conflicting shred of medical testimony." Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981). In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision." Morris v. Barnhardt, 02 Civ. 0377 (AJP), 2002 U.S. Dist. LEXIS 13681, at *12 (S.D.N.Y. July 26, 2002).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers if the claimant is presently working in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the Commissioner next considers if the claimant has a medically severe impairment. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the severity requirement is met, the third inquiry is whether the impairment

is listed in Appendix 1 of the regulations or is equal to a listed impairment. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1. If so, the disability is granted. If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him or her to perform any past work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability benefits. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990); Berry, 675 F.2d at 467.

While the claimant bears the burden of proving the first four steps, the Commissioner must prove the final one. Berry, 675 F.2d at 467. Thus, if the claimant is successful in showing that he is unable to continue his past relevant work, "the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

4

## II.   DISCUSSION

### A.   The ALJ's Decision

The facts and procedural history are familiar to the parties, and the Court will not repeat them in depth.  The Commissioner uses a five-step sequential evaluation process, as set forth in 20 C.F.R. §§ 404.1520, 416.920, when evaluating disability claims.  At step one, the ALJ found that Plaintiff was not engaged in any substantial gainful activity since her alleged onset of disability.  (Tr. 9).  At step two, the ALJ found Plaintiff had the following severe impairments: (1) bipolar disorder; (2) post-traumatic stress disorder; (3) personality disorder; and (4) a history of substance abuse.  (Tr. at 9-10).  At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 10).  In particular, the ALJ considered listings 12.04, 12.08, and 12.09 pertaining to affective disorders, personality disorders, and substance addiction disorders, respectively, none of which were satisfied. Id.  Next, the ALJ found that Plaintiff retained the residual function capacity ("RFC") to perform work at the medium exertional levels, but was limited to work involving only one or two step tasks in a low stress job defined as having no decision

5

making required and no changes in the work setting.  (Tr. 11).
At step four, the ALJ found that she was unable to perform any
past relevant work.  (Tr. 14).  The burden, therefore, shifted to
Defendant to bring forward evidence that substantial gainful
alternative employment exists which Plaintiff has the RFC to
perform.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v).  At
step five, the ALJ found that Plaintiff could perform other work,
including three representative occupations identified by the
vocational expert, as existing in significant numbers in the
national economy. (Tr. 14-15).  Accordingly, the ALJ held that a
finding of "not disabled" was appropriate under the Act.  (Tr.
15).

**B.    Alleged Errors by the ALJ**

As discussed above, a reviewing court will "set aside the
ALJ's decision only where it is based upon legal error or is not
supported by substantial evidence." <u>Balsamo v. Chater</u>, 142 F.3d
75, 79 (2d Cir. 1998).  The Court will address each of the
alleged errors raised by the plaintiff in support of his Motion
to Reverse or Remand the Commissioner.

**1.    Whether the ALJ Failed to Properly Consider  All
of Plaintiff's Ailments Singly and in Combination**

Plaintiff contends that the ALJ limited her to work at the
medium exertional level, but failed to elaborate on any physical

impairment that affects her.  Plaintiff argues that there must be some severe physical illnesses or ailments which would preclude heavy or very heavy exertion.  The Vocational Expert's ("VE") testimony at the hearing lists five different jobs that Plaintiff has held over the past 15 years.  (Tr. 35).  The highest exertional level job that Plaintiff held was as a certified nurse's aide, which is classified at the medium exertional level because it often involves lifting patients.  Id.  The remaining testimony focused upon whether Plaintiff could return to a job that required similar exertional output as her past employment. The ALJ's hypothetical questions required the VE to "assume a person of claimant's age, education, and experience, if they would perform at the medium level."  Id.  This court assumes that the ALJ's description of Plaintiff's exertional level in his opinion was merely in relation to Plaintiff's past work history, and was not an evaluation of any physical impairment.

Plaintiff further argues that the ALJ failed to consider any physical impairment when evaluating the severity of Plaintiff's illnesses and ailments.  Particularly, Plaintiff claims that her migraine headaches and gastrointestinal illnesses and ailments were not considered severe impairments. At the second step of the sequential evaluation process, the ALJ must determine whether the claimant has "any impairment or combination of impairments which

7

significantly limits [the claimant's] physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  Plaintiff bears the burden of providing medical evidence of such an impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 (1987), citing 42 U.S.C. § 423(d)(5)(A).  In order to determine a physical or mental impairment, a claimant must show medical evidence consisting of signs, symptoms, and laboratory findings, not only by a statement of symptoms.  20 C.F.R. §§ 404.1508, 404.1520(4)(ii), 416.908, 416.920(4)(ii).  The ALJ must consider the combined effect of all the claimant's impairments.  20 C.F.R. § 404.1523.  It is apparent from his decision that the ALJ took into account all of Plaintiff's alleged impairments, and there was substantial evidence for his finding that certain impairments did not significantly limit her physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521.

In Plaintiff's appeal to the ALJ, she only identified bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and polysubstance abuse as severe impairments that impose a limitation of function.  (Tr. 95).  Nonetheless, throughout Plaintiff's application process and in various medical records, Plaintiff references migraines as a source of her disability.  In fact, Plaintiff sometimes visited the medical centers only to address her migraine headaches.

8

Furthermore, Plaintiff's records indicate that she also has a history of colorectal cancer, which remains in remission. Plaintiff now contends that the medical records indicate that the colorectal cancer causes pain, tenderness, nausea, vomiting, and diarrhea.  Nothing in the medical records demonstrate a correlation between the history of cancer and these pain symptoms.

In Plaintiff's initial disability determination, dated March 31, 2008, she makes no reference to any gastrointestinal illnesses or ailments, and the Commissioner found that her history of intermittent headaches were "not so severe that they prevent [her] from performing [her] normal activities for [twelve] continuous months." (Tr. 49).  After reconsideration by the Social Security Administration on March 11, 2009, the agency found the medical evidence did not indicate that Plaintiff's conditions, including bipolar disorder, chronic depression, and chronic migraines, were totally disabling.  (Tr. 58).  Lastly, in the request for hearing by an ALJ, Plaintiff remained firm in her assertion that she is disabled, but her counsel's brief did not indicate any severe physical impairments.  (Tr. 95).

While the ALJ makes no specific reference to migraine headaches or gastrointestinal ailments in his opinion, there was no indication in the proceedings that there were physical

impairments at issue.  In fact, when the ALJ asked whether there were any physical impairments, Plaintiff's counsel responded that there were none and that Plaintiff only suffered from psychological and emotional impairments. (Tr. 21).  The ALJ did not simply rely on Plaintiff's counsel to develop the record, but rather depended on straightforward questions posed to the attorney and the claimant:

> ALJ:     Is there a history of polysubstance abuse?
> ATTY:    There is, Your Honor.
> ALJ:     Yeah.  Any other, any other impairments, physical?
> ATTY:    No.
> ALJ:     No.  Just psychological and emotional?
> ATTY:    Yes.
> ALJ:     Okay.  Very well.

(Tr. 21).  Furthermore, Plaintiff testified at the hearing in front of the ALJ that she stopped working due to mental impairments:

> Q:     When did you last work?
> A:     I tried to work, I believe, March of 2009.
> Q:     What caused you to stop working?
> A:     Violence after work and depression and I couldn't get out of bed and they just ended up firing me.

(Tr. 20).  Since Plaintiff's brief in support of her request for heaing indicated only the presence of mental impairments, Plaintiff's attorney confirmed at the hearing that there were only mental impairments, and Plaintiff herself said that she only

suffered from mental impairments, the ALJ sufficiently evaluated Plaintiff based on mental impairments.

An ALJ is required to consider only impairments that a claimant says she has or about which the ALJ receives evidence. 20 C.F.R. 404.1512(a).  In the instant case, while the references to her headaches in the record may have been sufficient to alert the ALJ to the possibility of an impairment,  Plaintiff does not specify how the migraines impair her ability to work, and merely speculates that they could be severe and disabling if the headaches occur every day. (Pl. Mem. at 17).   Plaintiff's argument rests solely on a technicality.   The Third Circuit denied remand in a factually similar case when a claimant "never mentioned [a physical impairment] as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments."  Rutherford, v. Barnhart, 399 F.3d 546, 533 (3d. Cir. 2005). See also Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004) ("Although Skarbek did not specifically claim obesity as an impairment . . . the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment.  Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case."); Cefalu v. Barnhart 387 F. Supp. 486, 496 (W.D.Pa. 2005) (reasoning that remand was not necessary since the

claimant failed to allege a mental impairment, made no attempt to show there was a mental impairment, and testified that there was no mental impairment).

### 2. Whether the ALJ Failed to Develop the Administrative Record

The Second Circuit requires that "the ALJ, unlike a judge in a trial, must [himself] affirmatively develop the record." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). This duty exists even where, as here, the claimant is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The record, however, need only be "adequate for [the ALJ] to make a determination as to disability." Id. at 48.

Plaintiff alleges that the ALJ failed to satisfy his duty to develop the record, as he did not obtain, add to the record, or review many of the available records and evidence. Plaintiff claims that there are various "missing" records that are referenced to in the Administrative Record that the ALJ failed to obtain. These "missing" records include Plaintiff's previous DIB and SSI applications that could potentially include other medical consultative examinations; a report from Plaintiff's primary care doctor, Daniel Dennehy; the findings, assessments, and opinions

12

of the Connecticut Department of Social Services; a potential evaluation from the Bureau of Rehabilitations Services of the State of Connecticut; and any description or report on Plaintiff's functional limitations.

With regard to Plaintiff's 2005 and 2008 applications, the ALJ was not required to obtain the files because there is no indication that the files contain any relevant information. See DeChirico v. Callahan, 134 F.3d 1177, 1183 (2d Cir. 1998) (reasoning that the ALJ was not required to subpoena files on other claims where counsel offered no reason other than to say that the files might be relevant). Plaintiff's brief demonstrates pure speculation on counsel's part, since it requests files that may "contain reports of consultative examinations" (Pl. Mem. at 21). See Rocchio v. Asture, No. 08 Civ. 3796(JSR)(FM), 2010 WL 5563842, at *13 (S.D.N.Y. Nov. 19, 2010) (stating that it was "sheer speculation" to assert that a previously denied file would provide further support for the current claim).

With regard to an alleged "missing" report from Dr. Daniel Dennehy (Tr. 49, Pl. Mem. at 21-22), Plaintiff's argument fails. Plaintiff contends that there is no report from Dr. Dennehy in the Administrative Record even though the Agency's March 31, 2008 Notice of Decision contains the following notation: "DANIEL

13

THOMAS DENNEHY MD report received 12/13/07." (Tr. 49).  As the defendant's brief makes clear, however, all of the medical sources listed in the Notice of Decision are described as having submitted "reports" to the Agency, and the notations simply reflect the fact that records from those sources have been received and reviewed.  (Def. Mem. at 11-12).  Dr. Dennehy's office treatment records and progress notes concerning Plaintiff's visits were in the record for the ALJ's review (Tr. 296-306).  Plaintiff's argument lies solely in the word choice of the Agency and fails to establish that any information from Dr. Dennehy is actually missing.

With regard to Connecticut Department of Social Services' ("DSS") reports, Plaintiff failed, once again, to indicate that anything was actually missing from the Administrative Record. Dr. Olayiwola and Clifford Briggie, LCSW, both indicate that they discussed and completed paperwork for DSS.  It is safe to assume that their completed paperwork would be based on their treatment notes, which are adequately in the administrative record, (Tr. 331-44, 379-98, 429-53).  Therefore, the ALJ did not err in not requesting the exact DSS forms prepared by Dr. Olayiwola and Mr. Briggie.

With regard to the Psychological Tests and Aptitude Tests potentially developed by the Bureau of Rehabilitation Services of

the State of Connecticut, Plaintiff fails to establish, except by
pure speculation, that such records actually exist.  At no point
in the administrative process did she indicate that anything was
missing from the record.

Plaintiff also alleges that the ALJ improperly failed to
contact Dr. Olayiwola and Mr. Briggie to ask for their opinions
concerning her functional limitations or her ability to perform
work.  The ALJ notes in his opinion that "[he] gave great weight
to the opinions of the claimant's treating physicians and
clinicians."  (Tr. 13).  While courts have held that in cases
involving *pro se* plaintiffs, an ALJ must make every reasonable
effort to obtain a report that sets forth the opinion of a
treating physician as to the existence, nature, and severity of
the claimed disability, Rosa v. Callahan, 168 F.2d 72, 82-83 (2d
Cir. 1999), the instant case involves a claimant represented by
counsel.  "The burden is on a claimant to provide all relevant
medical evidence and the ALJ is to order a consultative exam only
when this information is not 'sufficient' to make a decision."
Firpo v. Chater, No. 95-6081, 1996 WL 49258, at *2 (2d Cir. Feb.
7, 1996).  The record was sufficient for the ALJ to make a
decision.  Accordingly, the ALJ did not fail to properly develop
the Administrative Record.

### 3.    Whether the ALJ Committed Factual Errors in Evaluating the Evidence

Plaintiff next contends that the ALJ committed seven factual errors during his evaluation of her claim.   The court will address each of these alleged errors.

The first alleged error is that the ALJ misstated Dr. Steven Kahn's findings by writing that "the doctor noted that . . . she had difficulty with serial sevens, but not with serial threes." (Tr. 10).  Neither parts of this statement are misrepresentations of the record. (Tr. 312).  "Difficulty with serial sevens," (Tr. 10), is synonymous with "could not perform serial sevens," (Tr. 312).  Also, by noting that Plaintiff did not have difficulty with serial threes, the ALJ was not mischaracterizing or misrepresenting the doctor's findings that Plaintiff only made one error on this "easier task."  Id.

Plaintiff next alleges that the ALJ did not provide a definition of the word "occasional" when he concluded that Plaintiff was to have "only occasional interaction with co-workers" and "only occasional supervision."  (Tr. 11).  Social Security Ruling (SSR) 83-10 defines occasionally as "occurring from very little up to one-third of the time."  The VE stated that he was "[f]amiliar with Social Security regulatory definitions . . ." as well as the "terms and provisions in the

16

<u>Dictionary of Occupational Titles</u>." (Tr. 33-34); <u>see</u> U.S. Dept'
of Labor, <u>Dictionary of Occupational Titles</u> 281 (4th ed. 1991).
There has been no showing that the VE was unfamiliar with the
definition. When presented with a hypothetical from Plaintiff's
counsel, the VE simply sought to verify Plaintiff's counsel's
definition of the term. There was no error.

Next, Plaintiff alleges that the ALJ's question to the VE
was internally contradictory, since the hypothetical claimant in
the question was limited to both "occasional interaction with co-
workers" and "no interaction" with co-workers. (Tr. 35).
Regardless, in answering the question, the VE had two options:
(1) to assume that the hypothetical claimant could have
occasional interaction with co-workers; or (2) to assume that the
hypothetical claimant could have no interaction. In formulating
Plaintiff's RFC, the ALJ determined that Plaintiff could
occasionally interact with co-workers. (Tr. 11). It is
axiomatic that a person who is limited to occasional interaction
with co-workers can also perform jobs that require no such
interaction. As such, Plaintiff could perform jobs with either
occasional or no interaction with co-workers. Thus, even if the
VE interpreted the hypothetical to include the more extreme
limitation of having no interaction with co-workers, the jobs he
identified could also be performed by a person, such as the

plaintiff, who could occasionally interact with co-workers. There was no reversible error.

Plaintiff also asserts that the ALJ misstated her testimony regarding why her car was taken away from her. The ALJ specifically stated that Plaintiff "no longer drove because her family was concerned that she would have an accident." (Tr. 12). This characterization is not inconsistent with her testimony that her family took away her car because she "tried to hit people with [her] car." (Tr. 23). Plaintiff also argues that her testimony indicates an extreme impairment, rather than the moderate impairment found by the ALJ, with regard to Plaintiff's social functioning. The ALJ did not mischaracterize her testimony, and he properly considered her history of violence and anger when making his determination. (Tr. 12).

Next, Plaintiff alleges that the ALJ overstated Plaintiff's ability to perform activities of daily living. While Plaintiff testified that she will not eat unless her daughter cooks her food, (Tr. 26), and that she does not go shopping, (Tr. 24), she also testified that she sometimes cooks, (Tr. 23-24), and her answers to a survey regarding her "Activities of Daily Living" indicate that she went grocery shopping once per month (Tr. 157). Therefore, the ALJ did not mischaracterize Plaintiff's daily activities.

18

Finally, Plaintiff asserts that the ALJ failed to give her the "substantial credibility" she is entitled to based on her "fairly good work history." (Tr. 13). The ALJ opined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible to the extent alleged." (Tr. 12). A claimant with a good work record is entitled to "substantial credibility" when she says that she can no longer work because of disabling illnesses. Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983). This does not mean, however, that an ALJ *must* find the allegations to be credible even if the medical record does not support a finding of a claimant's disability. Johnson v. Astrue, No. 07-CV-0322C, 2009 WL 3491300, at *7 (W.D.N.Y. Oct. 23, 2009). Furthermore, as carefully explained in a recent opinion, Plaintiff's argument is an incomplete summary of the law. Montaldo v. Astrue, 10 Civ. 6163 (SHS), 2012 U.S. Dist. LEXIS 35250, at *49 (S.D.N.Y. Mar. 15, 2012). In fact, a "petitioner's work history 'is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.'" Id. (quoting Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). The ALJ's determination, "including the rejection of the claimant's testimony, must be upheld '[i]f the [ALJ's] findings are supported by substantial evidence.'" Montaldo, 2012 U.S. Dist.

19

LEXIS 35250 at *49 (quoting <u>Aponte v. Sec'y of Health and Human Servs.</u>, 728 F.2d 588, 591 (2d Cir. 1984)).

There was substantial evidence to conclude that Plaintiff's testimony with respect to the intensity, persistence, and limiting effects of her symptoms was not entirely credible.  The ALJ reasoned that "although the claimant complained of anger and difficulty getting along with people, her work history reflected that most of her jobs required her to interact with people." (Tr. 13).  In addition, there is evidence in the record that suggests discrepancies between her allegations and what she stated on a questionnaire outlining her activities of daily living.  (Tr. 13, 153-61).  The record also reveals significant gaps of time before Plaintiff made arrangements for psychiatric treatment, and she did not consistently seek the treatment needed.  (Tr. 13, 331-44, 379-98, 429-53).  Taken together, these inconsistencies undermine Plaintiff's allegations and her credibility.  The ALJ's finding of a "fairly good work history" does not automatically supersede the ALJ's discretion to weigh various components of the record.  Overall, the ALJ sufficiently evaluated Plaintiff's testimony and statements based on her fairly good work history and was not required to assign

20

"substantial credibility" to Plaintiff's allegations that she can no longer work.[1]

### 4. Whether the ALJ Properly Determined Plaintiff's RFC

Plaintiff alleges that the ALJ failed to properly determine her RFC.  "Residual functional capacity" is defined as "the most you can still do despite your limitations."   20 C.F.R. § 404.1545(a)(1).  It is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."   SSR 96-8p; Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 60 Fed. Reg. 34474 (July 2, 1996) ("[R]egular and continuing basis" means 8 hours per day, 5 days per week, and its equivalence).

In his opinion, the ALJ found that Plaintiff has the residual functional capacity to:

> perform work at the medium exertional level, but with the following nonexertional limitations: she is limited to work with only one or two step tasks in a low stress job defined as having no decision making required and no changes in the work setting.  She can have no interaction with the public and only occasional interaction with co-workers.  The work is isolated with only occasional supervision.

---

[1] Plaintiff's seventh alleged factual error, alleging that the ALJ failed to generally adopt the findings of the agency physicians, will be addressed in the following section.

(Tr. 11). Plaintiff raises seven allegations of error concerning the ALJ's RFC assessment.

Plaintiff's first, second, fifth, sixth, and seventh allegations of error all concern the physical RFC assessment. As addressed above, Plaintiff and her counsel specifically, and repeatedly, expressed during the administrative proceedings that there were no physical impairments at issue and she suffered from only mental impairments. There was no reversible error with respect to any alleged deficiencies in Plaintiff's physical RFC assessment.

With respect to Plaintiff's non-exertional RFC, she alleges that the ALJ failed to "generally adopt" the findings of the Agency physicians, as the ALJ stated he had done,[2] and that the ALJ's findings were not sufficiently specific. First, the Court notes that the ALJ specifically stated that he was only adopting the findings of the Agency physicians "to the extent that they were consistent" with his decision. (Tr. 13-14). Moreover, contrary to Plaintiff's assertions, the ALJ did incorporate the opinions of the agency physicians contained in the two RFC Assessment Forms (Tr. 313-16, 361-64) and two Psychiatric Review Technique Forms ("PRTF") (Tr. 317-30, 365-78). Those forms

---

[2] The alleged failure to adopt the findings of the agency physicians is captioned as Plaintiff' seventh alleged factual error, and as Plaintiff's fourth alleged error concerning the RFC assessment. Pl. Mem. at 28, 31-32.

included findings of moderate limitation on her ability to maintain attention and concentration for extended periods (Tr. 313, 361), moderate limitation of her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms (Tr. 314, 362), moderate limitations on her ability to perform at a consistent pace without an unreasonable number and length of rest periods, id., moderate difficulties in maintaining concentration, persistence, and pace (Tr. 327, 375), and marked difficulties in maintaining social functioning (Tr. 375). The defendant has argued that these limitations do not technically constitute an RFC finding under the regulations because they are found on the "B criteria" section of the PRTF (Tr. 327, 375), or in the summary conclusions section of the mental residual functional capacity assessment form, (Tr. 313-14, 361-62). In any event, the ALJ's RFC assessment is consistent with the Agency physicians' overall assessments, and the ALJ sufficiently adopted their recommendations. In particular, the ALJ specifically included in the RFC limitations on Plaintiff's ability to maintain concentration, persistence and pace by limiting her to work with only one or two step tasks in a low stress job. (Tr. 11). Plaintiff's documented difficulties in maintaining social functioning, as found by the Agency physicians, were incorporated

23

by the ALJ into the RFC through the limitation of "no interaction with the public and only occasional interaction with co-workers." Id.  The ALJ's non-exertional RFC findings were sufficiently specific and properly based on the complete record.  There was no reversible error.

####        5.    Whether Defendant Has Met His Burden of Proof to Produce Evidence that Substantial Gainful Alternative Employment Exists for Plaintiff

Finally, Plaintiff alleges that Defendant failed to sustain its burden of proof at step five of the sequential evaluation process found in 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).  In particular, Plaintiff argues that the ALJ's finding that jobs exist in the national economy that Plaintiff can perform is not supported by substantial evidence in the record because Plaintiff's functional limitation precludes all three jobs identified by the VE and the ALJ.  Where, as here, the claimant has been successful at step four of the sequential evaluation process in showing that she is unable to continue her past relevant work, the Commissioner has the burden under step five of proving that she retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.  Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

SSR 00-4p states that although "[o]ccupational evidence provided by a [vocational expert] . . . generally should be consistent with the occupational information supplied by the DOT," neither the DOT nor the vocational expert's opinion "trumps" when there is a conflict. SSR 00-4p. In the event of a conflict between the two, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] . . . evidence to support a determination or decision about whether the claimant is disabled." Id. Thus, during the hearing, "the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT." Id.

It is clear from the hearing transcript that the ALJ failed to fulfill his affirmative duty, since he did not ask the VE whether there were conflicts between his testimony and the DOT. At the beginning of the VE's testimony, the following dialogue ensued between the ALJ and the VE:

> Q: If there are any inconsistencies between your testimony and the terms and provisions of the Dictionary of Occupational Titles and Selected Characteristics of Occupations, will you advise me of them during this hearing?
> A: Yes, I will.
> Q: Do you need any additional information *before you testify* in the case?

(Tr. 34) (emphasis added).  In accordance with SSR 00-4p, an ALJ has an affirmative duty to ask whether there are inconsistencies with the VE's testimony and the DOT.  SSR 00-4p further outlines a two-step process: (1) "Ask the [vocational expert] if the evidence he or she has provided conflicts with information provided in the DOT;" and (2) "If the [vocational expert's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Thus, SSR 00-4p imparts an affirmative responsibility upon the ALJ to ask the VE about any possible conflicts.  The transcript clearly indicates that, following the VE's testimony, the ALJ never asked the VE whether his testimony conflicted with the DOT. Although he requested, prior to the VE's testimony, that the VE alert him in the event of a conflict, the ALJ essentially passed his affirmative responsibility to the VE.  In the Court's determination, this appears to be inconsistent with the structure of SSR 00-4p, and insufficient for the ALJ to ascertain whether there was a conflict.

Furthermore, there does appear to be a discrepancy between the VE's testimony regarding the jobs Plaintiff can perform and the ALJ's limitation of Plaintiff to one-step or two-step work. Thus, the failure of the ALJ to sufficiently "inquire into the nature of the discrepancy . . . as required [by step five],"

26

deprived Plaintiff of the opportunity to determine the full extent of any conflict between the vocational expert's testimony and the DOT.  Sanchez v. Barnhart, 329 F. Supp. 2d 445, 453 (S.D.N.Y. 2004).  For example, the ALJ determined Plaintiff was limited to "work with only one or two step tasks in a low stress job defined as having no decision making required and no changes in the work setting."  (Tr. 11).  This limitation coincides with a Reasoning Development Level 1 under the DOT's Scale of General Education Development.  Level 1 is defined as the ability to "[a]pply commonsense understanding to carry out simple one-or two-step instructions."  U.S. Dep't of Labor, Dictionary of Occupational Titles, 4th ed. 1991 at 1011.  Yet, machine operator, hand packer,[3] and laundry worker, the three jobs identified by the VE, are all assigned as Reasoning Development Level 2 under the DOT.  Id. at 934, 932-33, 239.  Id. at 1011. Reasoning Development Level 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized

---

[3] Although the transcript shows the vocational expert identified the DOT number for Hand Packer as 920.587.010, this number actually corresponds with "Cloth-Bolt Bander" in the textile industry.  This appears to either be a typographical error in the transcript or an unintentional misstatement by the vocational expert.  It is possible that the VE and the ALJ were both referring to the job of Hand Packager, with a DOT number 920.587-018.  This presents another opportunity for clarification upon remand.  Both of these jobs are listed as Reasoning Development Level 2.

situations." The record is devoid of any reference or explanation for the apparent conflict between the VE testimony and the DOT with respect to reasoning development levels of the suggested alternative occupations. Other courts in the Second Circuit have remanded cases to the Commissioner to explain similar discrepancies. See, e.g., Day v. Astrue, No. 09-131 (DRH), 2011 U.S. Dist. LEXIS 41738, at *51, 164 Soc. Sec. Rep. Service (E.D.N.Y., Apr. 18, 2011); Sanchez, 329 F. Supp. 2d at 453. Although such a conflict may have been reconciled with a reasonable explanation based on the VE's knowledge and experience, the ALJ's failure to make a sufficient inquiry of the VE, and the VE's failure to effectively notify the ALJ of the discrepancy, led to the absence of "a precise and informed decision in applying . . . evidence to the universe of jobs available in the economy, as required in the fifth part of the disability test." Sanchez, 329 F. Supp. 2d at 453.

For the foregoing reasons, the ALJ's determination that the Commissioner met his burden of proof at step five is not supported by substantial evidence.

## III. CONCLUSION

For the reasons set forth herein, this matter should be remanded to the Commissioner so that the ALJ can properly question the VE with respect to the existence of any

inconsistencies between his testimony and the DOT. In particular, the ALJ and the VE shall address the apparent discrepancy between the VE's testimony regarding the jobs Plaintiff can perform, and the ALJ's limitation of her to one-step or two-step work. In all respects, the ALJ shall fully comply with the provisions set forth in SSR 00-4p. Accordingly, Plaintiff's motion **(Dkt. 18)** should be **GRANTED** to the extent it seeks a remand for further proceedings before the ALJ. Plaintiff's motion should be **DENIED** to the extent it seeks an order reversing the decision of the Commissioner. Defendant's motion for an order affirming the decision of the Commissioner **(Dkt. 23)** should be **DENIED**. 28 U.S.C. § 636 (b)(1)(A).

The parties may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b). Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Dated at Hartford, Connecticut this ___2nd___ day of August, 2012.

/s/ Thomas P. Smith
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**